UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:19-cv-384-DJH

THOMAS SHOBE                                              PLAINTIFF

vs.

YASKAWA AMERICA, INC.

and

MOTOMAN, INC. AKA YASKAWA ELECTIC
CORP. OF JAPAN

and

FAURECIA AUTOMOTIVE SEATING LLC
d/b/a FAURCEIA EMISSIONS CONTROL SYSTEMS,
NA, LLC, d/b/a FAURECIA INTERIORS
LOUISVILLE, LLC

and

BELFLEX STAFFING NETWORK, LLC

                                                          DEFENDANTS

## COMPLAINT

Plaintiff THOMAS SHOBE, by counsel and for his Complaint against the Defendants Yaskawa America, INC., Motoman, Inc., Yaskawa Electric Corp. of Japan, Faurceia Automotive Seating LLC d/b/a Faurceia Emissions Control Systems, NA, LLC d/b/a Faurceia Interiors of Louisville, LLC, and Belflex Staffing Network, LLC states as follows:

1. Plaintiff is a citizen and resident of the Commonwealth of Kentucky, living in Louisville, Kentucky.

2. Defendant, YASKAWA AMERICA, INC. ("YASKAWA"), is a foreign corporation doing business in the Commonwealth of Kentucky, with its principal place of business in Waukegan, Illinois.

3. Defendant MOTOMAN, INC. AKA YASKAWA ELECTRIC CORP OF JAPAN ("MOTOMAN"), is a foreign corporation doing business in the Commonwealth of Kentucky, with its principal place of business in Dayton, Ohio.

4. At all times complained of here, Defendants YASKAWA and/or MOTOMAN was the manufacturer of the Motoman MAO1400 Robot and/or DX100 Controller that is the subject of this Complaint.

5. This Court has jurisdiction over Defendants YASKAWA and MOTOMAN because YASKAWA and MOTOMAN placed their products, including the robotic/motion equipment described herein, in the stream of commerce, knowing and intending that it would be purchased in Kentucky, and by doing so has purposely availed itself of the laws of Kentucky.

6. Defendant, FAURECIA AUTOMOTIVE SEATING LLC d/b/a FAURCEIA EMISSIONS CONTROL SYSTEMS, NA, LLC, d/b/a FAURECIA INTERIORS LOUISVILLE, LLC is a foreign corporation registered to and doing business in the Commonwealth of Kentucky, with its principal place of business in Auburn Hills, Michigan.

7. At all times complained of here, FAURCEIA was the employer of Plaintiff. FAURCEIA purchased, installed, and/or otherwise implemented the use of the above-mentioned equipment in its manufacturing processes. Plaintiff was assigned by Defendant, FAURECIA to

operate the equipment described above as part of his job requirements while working at FAURCEIA.

8. This Court has jurisdiction over Defendant FAURCEIA because FAURCEIA placed its products, including the mining equipment described herein, in the stream of commerce, knowing and intending that it would be purchased in Kentucky, and by doing so has purposely availed itself of the laws of Kentucky.  Further, FAURCEIA has manufacturing facilities physically located in the Commonwealth of Kentucky, specifically, Louisville, Kentucky.

9. Defendant, BELFLEX STAFFING NETWORK, LLC ("BELFLEX"), is a foreign limited liability company doing business in the Commonwealth of Kentucky with a principle place of business in Cincinnati, Ohio

10. This Court has jurisdiction over Defendant BELFLEX because BELFLEX operates a temporary employment agency in the Commonwealth of Kentucky, specifically Louisville, Kentucky.

11. Venue is proper in this Court because the events complained of herein occurred in Jefferson, County, Kentucky.

**FACTS**

12. On August 29, 2018 Plaintiff, Thomas Shobe was working at Defendant Faurceia's manufacturing facility on Indian Trail in Louisville, Kentucky.  Plaintiff was working at Faurceia via Defendant Belflex's temporary employment agency.

13. On August 29, 2018, Plaintiff Thomas Shobe was operating a Motoman MAO1400 Robot and/or DX100 Controller.  These pieces of equipment/machines are manufactured and produced by Defendants YAKSAWA and/or MOTOMAN.

14. After the machine had displayed a flashing red safety light, a red code ("port non-sensor") indicating the machine was disabled, the Plaintiff placed his hands on the machine to wipe off the sensor piece and shake off the hydraulic manifold.

15. Suddenly and without warning, the machine clamped down on Plaintiff's hand. The machine's computer then malfunctioned and locked.

16. Due to the locked state of the machine, Plaintiff had to instruct a co-worker how to manually free his hand from the machine. His crushed hand remained trapped in the machine for over four minutes.

17. After freeing his hand an agent or employee of Defendant, Faurceia, called for an Uber to take Plaintiff to the hospital.  Plaintiff's request for an ambulance were refused.

18. Sometime after the incident, pictures were posted in the Faurceia facility of Plaintiff's mangled hand.  Below and/or above the pictures was a caption that read "this is what happens when you don't follow the steps."

19. There was no audible or visible device to warn or signal workers that the machine was engaging with the red safety light on.

20. Due to the severity of his injuries, Mr. Shobe's hand was severely burned, disfigured, and otherwise injured.  This required multiple painful surgeries on his hand including procedures to graft skin from other parts of his body.

21. Plaintiff is permanently disabled and unable to work and support his family.

22. Plaintiff has suffered medical expenses, past and future, lost earnings, past and future, pain and suffering, past and future, among other damages.

23. Plaintiff has been severely traumatized, suffering great mental anguish and embarrassment.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Negligence

24. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

25. Defendants owed Plaintiff a duty to exercise reasonable care in the design, manufacture, installation, and repair of the Motoman MAO1400 Robot and/or DX100 Controller, which are the subject of his litigation, including the duty to ensure that the Motoman MAO1400 Robot and/or DX100 Controller did not cause personal injury to the Plaintiff.

26. Defendants knew or should have known that the Motoman MAO1400 Robot and/or DX100 Controller were defectively designed, manufactured, installed, and/or repaired, potentially causing personal injury to Plaintiff.

27. Defendants failed to exercise ordinary care and breached their duty by, among other things, negligently designing, manufacturing, installing, and/or repairing the Motoman MAO1400 Robot and/or DX100 Controller.

28. The aforementioned negligent acts and omissions of the Defendants were the direct and proximate cause of Plaintiff's damages.

29. Plaintiff is entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

## SECOND CLAIM FOR RELIEF
### Strict Products Liability – Design Defect

30. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

31. Defendants designed, manufactured, sold, installed, and/or repaired the Motoman MAO1400 Robot and/or DX100 Controller, which were intended by the Defendants to be used and operated by Plaintiff.

32. Defendants knew that the Motoman MAO1400 Robot and/or DX100 Controller were to be purchased and used without inspection for defects by the Plaintiff and the general public.

33. The subject Motoman MAO1400 Robot and/or DX100 Controller were unsafe for their intended use by reason of defects in their design, manufacture, and/or installation, so that the Motoman MAO1400 Robot and/or DX100 Controller would not safely serve their purpose, but would instead expose their users to serious injuries.

34. Defendants designed, manufactured, and installed the subject Motoman MAO1400 Robot and/or DX100 Controller, causing them to fail to perform as safely as an ordinary operator would expect when used in an intended or reasonably foreseeable manner.

35. The risks inherent in the designs of the subject Motoman MAO1400 Robot and/or DX100 Controller outweighed significantly any benefits of such designs.

36. Plaintiff was not aware of the aforementioned defects at any time prior to the events complained of this Complaint.

37. As a legal and proximate result of the aforementioned defects of the subject Motoman MAO1400 Robot and/or DX100 Controller, Plaintiff sustained injuries and damages set

forth herein while operating the subject Motoman MAO1400 Robot and/or DX100 Controller in a reasonably foreseeable manner.

38. Plaintiff is, therefore, entitled to damages in an amount to be proven at the time of trial.

## THIRD CLAIM FOR RELIEF
### Strict Products Liability – Failure to Warn

39. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

40. Defendants knew that the subject Motoman MAO1400 Robot and/or DX100 Controller would be purchased without inspection for defects.

41. The subject Motoman MAO1400 Robot and/or DX100 Controller were defective when they left the control of the Defendants.

42. At the time of the design, manufacture, sale, repair of the subject Motoman MAO1400 Robot and/or DX100 Controller, and continuing up to the time of Plaintiff's injuries, Defendants knew or should have known of the substantial dangers involved in the reasonably foreseeable use of the subject Motoman MAO1400 Robot and/or DX100 Controller, whose defective design, manufacturing, and lack of sufficient warnings caused the products to have an unreasonably dangerous propensity to cause significant personal injury.

43. Defendants knew that this substantial danger is not readily recognizable to an ordinary user and that the user would use the subject Motoman MAO1400 Robot and/or DX100 Controller without inspection.

44. At all relevant times, Defendants failed to provide adequate warnings, instructions, guidelines, or admonitions to Plaintiff of the defects, which the Defendants knew, or in the exercise

of reasonable care should have known, to have existed in a manner that was reasonably foreseeable by Defendants involving substantial dangers that were not readily apparent to the products users.

45. At the time of Plaintiff's injuries, the subject Motoman MAO1400 Robot and/or DX100 Controller were being used in the manner intended by the Defendants and in a manner that was reasonably foreseeable by Defendants as involving substantial danger that was not readily apparent to its users.

46. Plaintiff's damages were the legal and proximate result of the Defendants' failure to provide adequate warnings.

47. Plaintiff is, therefore, entitled to damages in an amount to be proven at the time of trial.

## FOURTH CLAIM FOR RELIEF
### Strict Products Liability – Manufacturing Defect

48. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

49. Defendants designed, manufactured, sold, installed, and/or repaired the Motoman MAO1400 Robot and/or DX100 Controller, which were intended by the Defendants to be used and operated by Plaintiff.

50. Defendants knew that the Motoman MAO1400 Robot and/or DX100 Controller were to be purchased and used without inspection for defects by the Plaintiff and the general public.

51. The subject Motoman MAO1400 Robot and/or DX100 Controller were unsafe for their intended use by reason of defects that occurred during the manufacture of the compenents,

- 9 -

so that the Motoman MAO1400 Robot and/or DX100 Controller would not safely serve their purpose, but would instead expose their users to serious injuries.

52. Defendants manufactured the subject Motoman MAO1400 Robot and/or DX100 Controller, causing them to fail to perform as safely as an ordinary operator would expect when used in an intended or reasonably foreseeable manner.

53. Plaintiff was not aware of the aforementioned defects at any time prior to the events complained of this Complaint.

54. As a legal and proximate result of the aforementioned defects of the subject Motoman MAO1400 Robot and/or DX100 Controller, Plaintiff sustained injuries and damages set forth herein while operating the subject Motoman MAO1400 Robot and/or DX100 Controller in a reasonably foreseeable manner.

55.

WHEREFORE, Plaintiff demands judgment against the Defendants herein for the following:

    a. such an amount as will fairly and reasonably compensate Plaintiff for his injuries set forth above,

    b. for their costs herein expended including reasonable attorney fees,

    c. for pre and post-judgment interest,

    d. punitive damages,

    e. trial by jury, and

    f. for all other relief for which the Plaintiffs appear properly entitled.

        Respectfully submitted,

        **ALEX R, WHITE, PLLC**

        /s/ John K. Spalding_____
        John K. Spalding
        908 Minoma Avenue
        Louisville, KY 40217
        Ph: 502-882-7552
        F:  502-585-3559
        john@arwhitelaw.com
        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

    The foregoing was served to all pre-existing parties within accordance with the Court's ECF/CM system and to all new parties in accordance with the Federal Rules of Civil Procedure.

        /s/ John K. Spalding_____
        *Counsel for Plaintiff*